**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ERIC PETTWAY,** * | |
| * | |
| Plaintiff, * | Civil Action No.: CV-25-474 |
| v. * | |
| * | **JURY DEMAND** |
| **TOWN OF MOUNT VERNON,** * | |
| * | |
| Defendant. * | |

**COMPLAINT**

COMES NOW, Plaintiff Eric Pettway, by and through undersigned counsel, and submits this, his Complaint against the Town of Mount Vernon, Alabama:

## I.   NATURE OF ACTION

Plaintiff brings this action to redress failure to pay overtime and for his termination in retaliation for complaining about this failure in violation of the Fair Labor Standards Act. Specifically, Plaintiff brings this action for injunctive relief, backpay, liquidated damages and attorneys' fees and costs under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §201 *et seq.*

## II.   JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331, 1343(a)(4), 2001, 2002, and the FLSA.

2. Venue is proper in the Southern District of Alabama, Southern Division pursuant to 28 U.S.C. § 1391(6) and (c).

## III.   PARTIES

3. Plaintiff Eric Pettway (hereinafter, "Pettway") is a male citizen of the United States and a resident of Mobile County, Alabama.

4. Defendant, the Town of Mount Vernon (hereinafter "Defendant" or "the Town"),

is an entity subject to suit under the FLSA.

## IV.   FACTS

5. Plaintiff Eric Pettway was employed by the Defendant Town of Mount Vernon as the Town's Chief of Police until he was terminated on November 19, 2025.

6. Pettway was employed by the Defendant as its Police Chief since May 29, 2024.

7. Pettway and Defendant entered into an Employment Agreement (hereinafter, "the Agreement") that stated Pettway's job duties and job title. See Employment Agreement attached herewith as Exhibit A.

8. The Agreement provided that Pettway was to perform administrative and managerial duties typically assigned to a police chief. It also provided that he was to be paid Sixty-Four Thousand Dollars ($64,000) annually.

9. While Pettway was responsible for the administrative and managerial duties related to his role as Police Chief, he was also primarily assigned to work on a regular patrol assignment when was on duty during his regularly scheduled hours.

10. During this time, Pettway did not, and could not, perform the administrative and managerial duties of a police chief. Instead, he was expected to exclusively perform the job duties of a patrol officer, including being instructed by Town Mayor Eric Peoples, Councilmember James May, and other town officials to write traffic tickets, especially to white workers who do not live in the Town, in an effort to generate revenue for the Town.

11. Pettway had no choice but to complete his administrative and managerial duties after hours while at home.

12. While other patrol officers in the Town were paid overtime for any hours worked over eighty (80) hours in each two week pay period, Pettway was not compensated for this time

worked over his regularly scheduled hours.

13.     Pettway regularly worked an additional twenty to twenty-five (20-25) hours in each two-week pay period performing administrative and managerial duties and was not paid for this time. The Town did not pay him for this work.

14.     The Town was aware that it had an obligation to compensate Pettway for his additional work time. It provided him with comp time for any time spent working as a patrol officer in excess of his regularly scheduled hours. The Town's Mayor, Eric Peoples, even reprimanded Pettway for not using accrued comp time and instructed him to "schedule some time off as soon as possible." See Memorandum attached herewith as Exhibit B.

15.     Though Pettway was nominally the Town's Police Chief, his primary duties were that of a patrol officer. The mere fact that he was also expected to perform administrative and managerial duties does not excuse the Town from paying Pettway overtime for any time performing those duties after working a full schedule as a patrol officer. The Mayor and Council's oversight of Pettway while Pettway was working as a patrol officer eliminated the opportunity for him to exercise any discretion or independent judgment with respect to matters of significance.

16.     Defendant violated the FLSA by failing to pay Plaintiff an overtime rate of pay for work that he performed in excess of forty (40) hours a week on behalf of the Town of Mount Vernon.

17.     Pettway began complaining about the Town's failure to pay him overtime in early 2025.

18.     Pettway complained to the Town's attorney, Jay Ross, and his feelings were known among the Town's leaders. Ross informed Pettway that he discussed the issue with the

Mayor and Town Council.

19. Ross confirmed that Pettway was primarily performing patrol officer duties and that he should be treated as a "non-exempt" employee.

20. However, the Town refused to treat Pettway as a "non-exempt" employee and properly pay him overtime.

21. Pettway continued his conversations with Ross through the Spring and Summer with no success. Pettway ultimately retained undersigned attorney during the Summer.

22. On August 7, 2025, Pettway's undersigned attorney sent a letter on behalf of Pettway to the Town's attorney, Jay Ross, demanding that Pettway be paid for all of his work time pursuant to the Fair Labor Standards Act. The Town has refused to comply.

23. Instead, on November 19, 2025, Pettway was terminated by the Town. No reason was given for the termination.

24. Pettway was terminated in retaliation for complaining and seeking to protect his rights under the Fair Labor Standards Act.

25. Defendant violated the FLSA by terminating Plaintiff because he complained about the Town's failure to properly pay him for all of his time worked on behalf of the Town of Mount Vernon.

### V. CAUSE OF ACTION
### COUNT I: FAIR LABOR STANDARDS ACT
### FAILURE TO PAY OVERTIME

26. Plaintiff re-avers and incorporates paragraphs 1-25 above as if fully set forth herein.

27. Defendant violated the FLSA by failing to keep accurate records showing all the

time it permitted or required Plaintiff to work, which resulted in the denial of compensation, either at a regular rate or an overtime premium rate for all time worked in excess of forty (40) hours in a workweek, as required by the FLSA.

28.     Defendant violated the FLSA by permitting or requiring Plaintiff to perform work in excess of forty (40) hours a week without paying him the proper overtime compensation for this time.

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

(a)     Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by the FLSA;

(b)     Award damages from the Town of Mount Vernon for Plaintiff, including compensation for unrecorded overtime work plus interest, post-judgment interest, and liquidated and exemplary damages, in an amount to be proven at trial;

(c)     Award all costs of litigation, including expert fees and attorneys' fees and costs; and

(d)     Award such other legal and equitable relief as the Court deems proper.

## VI.     CAUSE OF ACTION
## COUNT II: FAIR LABOR STANDARDS ACT
## RETALIATION

29.     Plaintiff re-avers and incorporates paragraphs 1-25 above as if fully set forth herein.

30.     Plaintiff complained to the Town and its attorney about the Town's failure to pay

him in violation of the Fair Labor Standards Act.

31.     This motivated and was the reason the Town terminated Plaintiff on November 19, 2025.

32.     The Town's termination of Plaintiff for him complaining about violations of the FLSA was retaliation which is also a violation of the FLSA.

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

(a)     Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by the FLSA;

(b)     Award damages from the Town of Mount Vernon for Plaintiff, including compensation plus interest for lost work time, front pay, post-judgment interest, and liquidated and exemplary damages, in an amount to be proven at trial;

(c)     Reinstate Plaintiff to the position and pay to which he would be entitled had he not be unlawfully terminated from his employment by Defendant;

(d)     Award all costs of litigation, including expert fees and attorneys' fees and costs; and

(e)     Award such other legal and equitable relief as the Court deems proper.

**Plaintiff Demands a Trial by Struck Jury.**

**Done this 20th day of November, 2025.**

/s/ Thomas M. Loper
Thomas M. Loper (LOPET8947)
ASB No.: 8947-O57L

LOPER LAW LLC
452 Government Street, Suite E
Mobile, AL 36602
Phone: (251) 288-8308
tloper@loperlawllc.com

*Counsel for Plaintiff*


**PLEASE SERVE DEFENDANT AS FOLLOWS:**

Town of Mount Vernon, Alabama
Lacie Taylor, Town Clerk
Mt. Vernon Town Hall
1565 Boyles Avenue
Mt. Vernon, AL 36560

# Exhibit A

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is made and entered between the Town of Mt. Vernon, Alabama (hereinafter referred to as "Town"), and Eric Andre Pettway (hereinafter referred to as "Chief"), effective on the date all parties have signed below, in consideration of the mutual promises herein, on the following terms and conditions:

1. **Recitals.** The Town is a municipality located in Mobile, County, Alabama. The Town desires to employ the Chief as the Chief of Police of the Town's Police Department, and the Chief desires to accept employment, based on the terms and conditions stated in this Agreement. The Chief represents that he is capable, able, and qualified to perform his employment duties in a manner that is responsive to the needs of the Town in all respects.

2. **Commencement Date.** The Town hereby employs the Chief, and the Chief accepts employment with the Town, commencing on May 29, 2024.

3. **Sworn Law Enforcement Officer Certification.** At all times during employment by the Town, the Chief shall maintain his active status as a sworn law enforcement officer (APOST certification) as the term is defined pursuant to Alabama law.

4. **Position.** During his employment, as a Department Head, the Chief shall be the highest ranking executive and administrative employee in the Police Department. The Chief is authorized to work independently and with discretion while reporting to and consulting with the Mayor, particularly in determining major policies. The Mayor shall be the direct supervisor and primary point of contact for all reporting by the Chief.

5. **Job Duties.** The parties agree the Chief's primary and essential job duties include the following:
   a) The Chief shall be responsible for the planning, direction, and management of all activities of the Police Department.
   b) The Chief shall be responsible for supervising all Police Department supervisors, officers, and civilian personnel; for imposing and/or reviewing discipline of police officers and civilian personnel in the department; interviewing and making recommendations for hiring of new employees; preparing recommendations for promotions and discharges based upon performance and due process as budget permits; recommending salary and promotional advancements; making and/or recommending, as appropriate, commendations, suspensions, and transfers of police officers and civilian employees within the Department.
   c) The Chief also shall be responsible for acting as custodian of all Departments of Police property, books, records, and equipment as well as property held as evidence; reviewing completed work, records, and reports of subordinates for accuracy; requisitioning equipment and supplies for the Police Department; scheduling work and activities of personnel; directing and developing a training program including general law enforcement, firearms, and other employee development training programs; reviewing and approving the department budget

before submission to the Town Council; and controlling expenditures of departmental appropriations.

d) The Chief shall also be responsible for receiving and resolving, or making recommendations concerning resolution of, complaints concerning the operation of the Police Department and its personnel, in consultation with the Mayor and Town Council.

e) The Chief also shall be responsible for maintaining cooperative working relationships with the Mayor, the Council, other Department Heads, and other law enforcement agencies and other emergency management agencies.

f) The Chief also shall be actively involved in the community and responsible for making speeches to community organizations and promoting community policing techniques and public relations.

g) The Chief is also required to attend all Council Meetings and report to the Council of Police Department activities when requested.

h) The Chief also shall perform such other related work and other duties as are customarily performed by one holding the position of Chief of Police, as directed or instructed by the Mayor.

6. **Duty to Perform Services.** The Chief shall utilize his best efforts and skills to reduce the per capita crime rate within the Town and its police jurisdiction. The Chief shall use his best efforts to promote the interests and public safety of the Town. The Chief agrees that he will at all times faithfully, industriously, and to the best of his ability, and to the highest professional standard, perform all of the duties that may be required of and from him pursuant to the express and implicit terms of this Agreement, in a competent and professional manner and to the reasonable satisfaction of the Mayor and Town Council.

7. **Duty of Loyalty.** The Chief acknowledges and agrees that the Town places a high level of confidence and trust in him. The Chief acknowledges his duty to place the Town's interests first during his employment and duty not to engage in any conduct causing a conflict of interest. During employment with the Town, the Chief will devote his full business time and attention to performing his duties. During employment with Town, the Chief agrees not to engage in employment with or work for any other entity or engage in any self-employment without written authorization of the Town Council or Mayor.

8. **Compliance with Law and Policy.** In the performance of his duties, the Chief shall operate the Police Department in accordance with the laws of the United States of America and the State of Alabama, the Town charter, all ordinances of the Town Council, directives of the Mayor and Town Council, and all policies, procedures and standards established by the Town applicable to all Town employees. The Chief shall require all employees under his supervision to comply with these laws and policies.

9. **Residence Restriction.** During employment with Town, the Chief will reside solely within Mobile County, Alabama and will not reside elsewhere without written authorization of the Town Council or Mayor.

10. **Conflict of Interest.** The Chief covenants that he presently has no interest and shall not acquire any interest, direct or indirect, that would conflict, in any manner or degree, with his performance of services for the Town. The Chief further covenants that no officer, member, or employee of the Town, and no other public official who exercises any functions or responsibilities in the review of approval of the undertaking or carrying out of this Agreement, has any personal or financial interest, direct or indirect, in this Agreement or in the proceeds thereof. The Chief further covenants that during his employment and performance of services, no person having any such interest shall be employed by him, or recommended for employment by him, within the Town's Police Department.

11. **Work Location and Hours.** The Town expects the Chief work on a full time basis and work the amount of time necessary to meet the Town's expectations. The Town further expects the Chief to work in the assigned offices and worksites and to be available for in-person meetings and consultations with the Mayor, other Department Heads, and Town employees during the Town's regular business hours, Mondays through Fridays. The Chief understands and agrees that night and weekend work may be required and necessary to perform his job duties properly and fully. As long as the Chief remains available for onsite collaboration, unless otherwise directed by the Mayor, the Chief may exercise discretion over times of arrival or departure or other time worked.

12. **Compensation, Benefits, and Facilities.** The Town will provide the Chief during his employment the following compensation, benefits, and facilities:

    A. **Salary.** The Town will pay the Chief an annual salary of Sixty-Four Thousand Dollars and No Cents ($64,000.00), less deductions required or allowed by law, pursuant to its usual and customary payroll procedures and practices, payable in biweekly installments on the Town's usual paydays. The Chief shall be entitled to any across-the-board cost-of-living raises or pay adjustments in the same manner and in the same percentage that may be provided to all other Town employees. Any merit-based salary increases may be awarded solely at the discretion of the Town Council, to become effective on the first day of the first payroll period after such approval. The Town Council is also authorized, in its sole discretion, to implement a salary decrease as a disciplinary measure.

    B. **Vacation and Sick Leave Pay.** During the calendar year of 2024, the Town will advance to the Chief ten (10) paid vacation days and seven (7) paid sick leave days for use during the remainder of 2024. Effective January 1, 2025, and on January 1st of each subsequent calendar year, the Town will advance to the Chief fifteen (15) paid vacation days and ten (10) paid sick leave days to be used during the relevant calendar year. The Chief shall notify the Mayor or his designee at the end of each calendar month of the number of sick leave and/or vacation days used during the previous month. Unused vacation days and unused sick leave days will be forfeited at the end of each calendar year, except that, no later than March 24 of a calendar year, the Chief may request payment for up to ten (10) vacation days

and up to five (5) unused sick leave days not used during the preceding calendar year. If the Chief does not claim such payment by March 24, the Town assumes no payment liability. No vacation or sick leave days may be accrued for future use by the Chief. At termination of employment, the Town will pay the Chief for any unused vacation days and paid sick leave days on the first regular payday following termination.

C. <u>Pension</u>. The Chief shall be eligible on the employment commencement date to participate in a defined benefit retirement plan administered by the Retirement Systems of Alabama. The applicable plan documents control all issues relating to eligibility, vesting, benefits, and administration. The Town shall contribute any matching funds in the same manner as all other Town employees.

D. <u>Health Insurance</u>. The Chief shall be eligible on the employment commencement date to participate in the Town's health plan. The Town will pay 100% of the family coverage premiums for the Chief under the current insurance plan. The applicable plan documents control all issues relating to eligibility, premium payment responsibilities, claims, benefits, and administration. The Chief will pay and be solely responsible for any non-covered medical expenses.

E. <u>Workers Compensation</u>. The parties agree that any work or duty-related injuries shall be covered by the provisions of the Alabama Workers Compensation Act.

F. <u>Vehicle</u>. The Town will provide the Chief with an unmarked emergency response police vehicle to be used twenty-four (24) hours per day, equipped with police radios, cellular telephone services, and other communication devices. The Chief agrees to comply with all Town policies concerning the use of this vehicle, to include personal and extraterritorial uses for this vehicle, consistent with the Alabama State Ethics Laws.

G. <u>Cell Phone</u>. The Town will provide the Chief with a cellular phone device and/or other communication device. The Chief's use of the device or phone will be governed by the Town's Phone Use Policy.

H. <u>Other Facilities</u>. The Town will provide the Chief with office space, furnishings, uniforms, weapons, equipment, supplies, etc., required for performance of service as those provided to other Police Department employees.

I. <u>Training</u>. The Town will pay for, or reimburse the Chief for, the costs of any necessary or required training, such as APOST certification training, as well as associated travel costs, room and meals costs during such training.

13. <u>**Exempt Status**</u>. The Chief acknowledges that he is an "exempt" status employee within the meaning of the *Fair Labor Standards Act* and is not entitled to any additional overtime pay. *Provided, however*, to the extent any court or arbitrator determines that the Chief is not an "exempt" status employee, the Chief acknowledges that the Town

has an established a 14 day "work period" for law enforcement officers that is equivalent to two of the Town's regular seven-day work weeks and that, pursuant to Section 7(k) of the Fair Labor Standards Act, 29 U.S.C. § 207(k), his potentially eligible for overtime pay based on hours worked only if he works more than eighty-six (86) hours during the established 14-day work period.

14. **Compensatory Time.** Notwithstanding the Chief's status as an exempt employee, the Town expects the Chief to keep accurate and truthful records of his hours worked. For each hour worked over eighty-six (86) hours during the City's established 14-day work period, the Chief will accrue 1.5 hours of compensatory time. Up to 160 hours of compensatory time may rolled over from one year to the next; if the Chief has more than 160 hours of compensatory time at the end of a calendar year, the Town will pay the Chief for the hours in excess of 160. At the end of each calendar year, the Chief may also request cash payment for up to 80 hours of unused compensatory time. The Town may apply compensatory time during any leave of absence and/or for absences after the Chief has exhausted any vacation pay or sick leave. The Town will pay the Chief for unused compensatory time at termination of employment for any reason.

15. **Employment At-Will.** The parties agree that the Chief's employment with the Town is and will be for no definite period of time. The Town and the Chief each may terminate the employment relationship at any time, with or without cause, or with or without advance notice. The Chief expressly acknowledges that he has no property rights in his employment and is not entitled to any pre-disciplinary or post-disciplinary process or appeal of any decision by the Town or the Mayor concerning employment actions or termination of employment. The parties expressly agree that the provisions of *Alabama Code* § 11-43-160, § 11-43-182, §§ 11-43-230 to 11-43-232, and the *Mobile County Civil Service Act,* Local Act 470 of the 1939 Local Acts of Alabama (*Ala. Code* §§ 45-49-120 *et seq.*), are not applicable to the employment relationship. The Chief expressly waives and foregoes any potential pre-disciplinary or post-disciplinary process or appeal rights he potentially might have under *Alabama Code* § 11-43-160, § 11-43-182, §§ 11-43-230 to 11-43-232, and §§ 45-49-120 *et seq.*).

16. **Notice of Resignation.** Notwithstanding the at-will relationship, for their mutual benefit and convenience, the Chief agrees that, if he desires to end the employment relationship, the Chief will provide the Mayor or Town Council at least 30 days written advance notice of resignation stating the reason for leaving and the effective resignation date. The Town may in its sole discretion require the Chief to cease work activities and go on a leave of absence at any time during the resignation notice period. The Town will provide compensation and benefits up to but not beyond the resignation date, whether the Chief continues working or is on leave of absence during the resignation notice period.

17. **Termination Payment.** If the Town decides to terminate the Chief's employment with or without cause during the first six (6) months of his employment, the Town will pay the Chief an amount equal to three (3) additional days of his regular salary. If the Town decides to terminate the Chief's employment with or without cause after the Chief has

completed six months of employment, the Town will pay the Chief an amount equal to sixty (60) additional days of his regular salary plus an amount equivalent to two months of health insurance premiums. The Town's termination payment will be subject to applicable payroll deductions and will be made on the first regular payday after the termination date. The termination pay is in addition to the payment for any unused vacation pay or sick leave pay as outlined in paragraph 11.B.

18. **Return of Property.** At any time on request by the Mayor or Town Council, immediately upon notice termination by the Town, or on the date of the Chief's resignation, the Chief shall provide to the Mayor all firearms, weapons, cell phone, vehicle, uniforms, keys, badges, computer hardware or software, and other property issued to him by the Town, as well as all Town records, reports, files, documents, codes, and passwords within his possession or control. If the Chief provides a notice of resignation or the Town provides notice of termination, the Chief also shall carry out such directives as the Town may issue concerning the safeguarding or disposition of records and property within his possession or control or issued to him as part of his employment.

19. **Indemnity.** The Town agrees to defend and hold the Chief harmless, to the extent permitted by law, from and against all third-party assertions of liabilities, obligations, damages, penalties, claims, costs, and expenses (including, without limitation, fees and expenses of attorneys, except witnesses and other consultants, who are employed with the prior approval of the Mayor), that may be imposed upon, incurred by or asserted against the Chief by reason of his activities undertaken pursuant to his duties and within the scope of this Agreement. This Agreement specifically denies indemnity to the Chief for his intentional, willful, wanton, or criminal acts.

20. **Notices.** All notices, consents, approvals, requests, and other communications (herein collectively referred to as "Notices") required or permitted under this Agreement shall be given, in a signed writing, and mailed by first-class mail and addressed as follows:

IF TO THE CHIEF:
    ERIC ANDRE PETTWAY
    7581 Spice Pond Road
    Eight Mile, AL 36613
    EMAIL: eric_pettway@yahoo.com

IF TO THE TOWN:
    MAYOR ERIC PEOPLES
    TOWN OF MT. VERNON
    1565 BOYLES AVENUE
    MT. VERNON, ALABAMA 36560
    EMAIL: ericpeoples1114@yahoo.com

WITH COPY TO:    JAY M. ROSS

ATTORNEY FOR TOWN OF MT. VERNON
ADAMS AND REESE LLP
POST OFFICE BOX 1348
MOBILE, AL 36633
EMAIL: jay.ross@arlaw.com

21. **Limitation Concerning Potential Future Payments**. The Chief's status is that of an unsecured, general creditor of the Town with respect to any future payment(s) described in this Agreement. The Chief has no claim against any particular asset or account of the Town. The Town has no obligation to create any particular fund or designate any specific account to make any future payment(s) described herein.

22. **Governing Law and Venue**. The parties agree that this Agreement was delivered and executed within the State of Alabama. This Agreement shall be construed, interpreted, governed, and enforced in accordance with the laws of the State of Alabama, without regard to the choice of law principles.

23. **Arbitration**. The parties agree that any controversy, dispute, or claim involving the Chief and the Town, its subsidiaries, agents, officials, or employees, and arising out of or relating in any manner to the Chief's employment, including but not limited to claims based on or arising from an alleged violation of any statute or any claim under the common law, including breach of contract, tort, or claim seeking any form of remedy in tort, shall be subject to the rules of the American Arbitration Association and in accordance with the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.* Judgment upon the award rendered may be entered in any court having jurisdiction. The Chief and the Town, its subsidiaries, agents, and employees agree and understand that arbitration has been chosen instead of litigation to resolve any disputes between these parties. The parties understand that they have forfeited the opportunity to go to court to resolve any dispute between the Chief and the Town, its subsidiaries, agents, or employees. The parties acknowledge that the Chief's employment evidences and involves a transaction in interstate commerce.

24. **Jury Trial Waiver**. The Town and the Chief voluntarily and knowingly waive any rights to jury trial to resolve any disputes or claims relating in any way to this Agreement or to the parties' employment relationship, decisions made by the Town during the employment relationship, or termination of this Agreement or the employment relationship, either pursuant to arbitration under the previous paragraph or pursuant to a court action

25. **Attorneys' Fees**. In the event that either the Town or the Chief shall commence any legal proceedings to enforce any of the terms, covenants, or provisions of this Employment Agreement, the prevailing party shall be entitled to recover its litigation costs and attorneys' fees arising out of such litigation.

26. **Captions**. The captions contained in this Agreement are for convenience and reference only, and shall not be held to explain, modify, amplify or aid in the

interpretation, construction or meanings of the provisions of this Agreement to which they relate.

27. **Duplicate Originals**. This Agreement may be executed in duplicate originals, each of which, if fully executed, may be admitted in evidence as a duplicate original. This Agreement may be signed in counterparts. Electronic signatures and electronic copies of signatures shall be as good and binding as original ink signatures.

28. **Severability**. The provisions of this Agreement are severable. A court of competent jurisdiction may modify any provision of this Agreement in order to make the provision enforceable. The court may alternatively sever any provisions deemed unenforceable while preserving the remainder of the Agreement. If any provision or the scope of any provision is found to be unenforceable or is modified by a court, the other provisions, or the affected provisions as so modified, shall remain fully valid and enforceable.

29. **Entire Agreement**. The Chief was not induced to enter into this Agreement by, and has not relied upon, any prior written or verbal discussions, promises, commitments, proposals or representations that are not contained within the written terms of this Agreement. This Agreement contains the full, entire and integrated agreement and understanding of the parties on the entire subject matter covered by this Agreement. All written or verbal discussions, negotiations, commitments, proposals and representations related to the subject matter of this Agreement are merged in this Agreement.

30. **Amendment/Modification**. This Agreement cannot be changed, including additions, deletions or amendments, except by written agreement signed by the Chief and the Town's Mayor. No verbal promise or statement or unsigned written promise or statement concerning pay, bonuses, or any other terms and conditions of employment is binding on Town. *Provided however*, as the only exception to this provision, the parties agree that a written notice from Town of a salary adjustment shall be deemed an amendment to this Agreement without both parties' signatures.

31. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns.

32. **Knowing and Voluntary Agreement**. The Chief has been advised to consider the terms of this Agreement and provided full opportunity to discuss the terms of this Agreement with his legal counsel. The Chief acknowledges that, before signing, he has read, understands, and voluntarily accepts the terms of this Agreement.

[remainder of page intentionally blank; signatures on the next page]

IN WITNESS WHEREOF, the parties have executed this Agreement on the respective dates set forth below.

*[signature]*
ERIC ANDRE PETTWAY

Date: 06-07-2024

STATE OF ALABAMA
COUNTY OF MOBILE

    I, the undersigned Notary Public, in and for said State and County, hereby certify that ERIC ANDRE PETTWAY whose name is signed to the foregoing Employment Agreement, and who is known to me, acknowledged before me on this date that, being informed of the contents of said document, he willfully executed the same.

    Given under my hand and seal this the 7th day of June, 2024.

*[signature]*
NOTARY PUBLIC
My Commission Expires: TENA FIELDS DILLARD My Commission Expires JULY 10, 2026

TOWN OF MT. VERNON, ALABAMA

BY: *[signature]*
HONORABLE ERIC PEOPLES
MAYOR

Date: 6-7-24

ATTEST:
*[signature]*
JACQUELINE NILES, Town Clerk

THIS INSTRUMENT PREPARED BY:

R. Scott Hetrick, Esquire
ADAMS AND REESE LLP
Post Office Box 1348
Mobile, AL 36633
(251) 433-3234 Telephone
(251) 438-7733 Facsimile
Email: scott.hetrick@arlaw.com

# Exhibit B



Town of Mount Vernon
1565 Boyles Avenue
Mount Vernon | AL | 36560

# MEMORANDUM

DATE: July 16, 2025

TO: Chief Eric Pettway

FROM: Mayor Eric Peoples

RE: Comp Time

Chief Pettway,

It has come to our attention that you have an excessive amount of comp time. As of June 20, 2025, you have 187.43 hours of comp time accrued. Please schedule some time off as soon as possible.

Thank you,

*Eric L. Peoples*
Eric L. Peoples
Mayor

Cc: Lacie Taylor