**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ERIC PETTWAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 25-00474-KD-C** |
| | ) | |
| **TOWN OF MOUNT VERNON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This action is before the Court on the Joint Motion to Approve Settlement. (Doc. 16). Upon consideration, and for the reasons set forth herein, the Court is unable to find that the proposed Settlement Agreement is a fair and reasonable resolution of Plaintiff Eric Pettway's claims under the Fair Labor Standards Act ("FLSA"). Accordingly, the parties are granted **leave to file** an amended proposed Release and Settlement Agreement and renewed Joint Motion to Approve Settlement which address the Court's concerns **on or before December 4, 2026.**

I. Background

Pettway was Mount Vernon's Chief of Police from May 29, 2024 until his termination on November 19, 2025 (Doc. 1 at ¶ 5-6). Pettway claims that, pursuant to the terms of his Employment Agreement, he was hired to perform administrative and managerial duties and work a regular patrol assignment during his scheduled hours. (Id. at ¶ 9). Pettway asserts that he had to perform his administrative and managerial duties after hours while working from home because Mount Vernon Mayor Eric Peoples, Councilmember James May, and other town officials instructed him that he should exclusively fulfill the duties as a patrol officer. (Id. at ¶ 10, 11). He alleges that he consistently worked an additional 20-25 hours per pay period, in addition to the 80 regularly scheduled hours, to complete the administrative and managerial duties. (Id. at ¶ 13).

Although Pettway states Mount Vernon official knew they must compensate him for overtime, he was not paid for overtime like his colleagues. (Id. at ¶ 12, 14). In early 2025, Pettway began to speak to Mount Vernon officials and town attorney Jay Ross about his dissatisfaction (Id. at ¶ 17, 18). Ross informed Pettway he was a "non-exempt" employee. (Id. at ¶ 19). Pettway alleges that Peoples knew about the unpaid overtime because he encouraged Pettway to use his compensation time and schedule time off "as soon as possible." (Id. at ¶ 14).

Pettway continued speaking with Ross about his dissatisfaction through the Spring and Summer of 2025. (Id. at ¶ 21). Then, Pettway hired counsel to represent him. (Id.). On August 7, 2025, Pettway's counsel sent a letter to Ross demanding Pettway be paid his overtime pay pursuant to the FLSA. (Id. at ¶ 22). Mount Vernon did not respond to the letter, and Pettway was fired on November 19, 2025. (Id. at ¶ 22, 23). Pettway asserts he was not given a reason for his termination. (Id. at ¶ 23).

On November 20, 2025, Pettway filed a Complaint in this Court against Mount Vernon alleging failure to pay overtime (Count One) and retaliation (Count Two) under the FLSA. (Doc. 1). Also in 2025, Pettway filed an action in state court for breach of contract based on Mount Vernon's delay in making certain payments required under his employment contract after termination (Doc. 16, p, 1).

II. The FLSA

Congress enacted the FLSA to protect employees from unfair working conditions and unfair compensation. Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1352 (11th Cir. 1982). The FLSA provides:

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…

29 U.S.C. § 216(b). Additionally, 29 U.S.C. § 216(b) also provides that "... The court…shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The FLSA provides that "[a]ny employer who violates the provision of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages[.]" 29 U.S.C. § 216(b).

The Court in Lynn's Food Stores provided two ways a plaintiff may recover back wages under the FLSA. 679 F.2d at 1352-53. The first route is covered under 29 U.S.C. § 216(c), where the Secretary of Labor supervises payment of unpaid wages to employees. Id. If a plaintiff seeks back wages under § 216(c), he forfeits his right to bring a suit for unpaid wages and liquidated damages if the full amount of back wages is received by plaintiff from the employer. Id. at 1353. The second route requires a plaintiff to bring a direct suit against his employer for back wages under 29 U.S.C. § 216(b). Id. Under § 216(b), the parties may present to the district court a proposed settlement. The district court reviews the proposed settlement and if it is a fair and reasonable resolution of a bona fide dispute under the FLSA, the Court may approve the settlement and enter a stipulated judgment. Id. at 1353, 1355.

When an employee works in excess of 40 hours per week, the FLSA requires the employer to pay the employee at a rate of 1 ½ times the employee's regular hourly wages. Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2162 (2012) (citation omitted); 29 U.S.C. § 207(a)(1). Likewise, a provision exists for law enforcement. 29 U.S.C. § 207(k). And for law enforcement, compensatory time off is available. 29 U.S.C. § 207(o).

The requirement for court approval of an FLSA settlement found in Lynn's Food Stores does not extend to settlement of Pettway's retaliation claim brought pursuant to 29 U.S.C. §

215(a)(3). District courts have concluded that Lynn's Food Stores and the FLSA "do not compel the Court to approve the fairness of an FLSA retaliatory discharge settlement, provided that the terms of that settlement do not 'contaminate' or affect the settlement of the FLSA wage claim." Fitzwater v. Cole, 2019 WL 6270235, at *3 (S.D. Ala. Nov. 22, 2019).

## III. Analysis

### a. Bona Fide Dispute

Upon review of the Complaint (doc. 1), the Answer (doc. 4), and the parties' Joint Motion for Approval of Settlement (doc. 16), the Court finds that there is a bona fide dispute over Pettway's FLSA claims. Specifically, the parties dispute whether Pettway was paid for some overtime hours or paid for overtime hours through compensatory time payment after his termination and also dispute the amount of overtime hours that Pettway worked and whether those overtime hours were recorded properly. (Id. at ¶ 19-32). Further, the parties dispute the FLSA retaliation claims. (Id. at ¶ 33-34).

### b. Compromise of the FLSA Claim

Under the FLSA, Mount Vernon is liable to Pettway in the amount of his unpaid overtime compensation and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). In the Joint Motion, the parties agree that the settlement is a compromise of Pettway's claims (doc. 16, p. 9, 11). The parties state that the settlement amount is approximately 34% of Pettway's estimated amount and that the settlement is intended as a compromise of their disputed claims.

### c. Whether the Proposed Settlement is Fair and Reasonable

Although the parties assert that the proposed Settlement Agreement is fair and reasonable settlement of an FLSA claim, the Court does not agree. For the Court to consider whether the proposed Settlement Agreement is a fair and reasonable settlement of a bona fide dispute under the FLSA, the parties should file an amended proposed Settlement Agreement to address the following:

1. The State Action settlement

Lynn's Food Stores requires approval of a settlement of a bona fide dispute under the FLSA. Therefore, the Court will only consider a proposed Settlement Agreement as to Pettway's claims under the FLSA. Any provision of the proposed Settlement Agreement that includes the State Action[1] or combines the FLSA action and the State Action such as, but not limited to, the provision for "Non-Admission", the provision regarding attorney's fees and costs, (see paragraph 2 herein), and the provision for "Joint Dismissal of Lawsuits" should be amended.

2. "Settlement Consideration – Attorneys' Fees and Costs"

The FLSA requires that the district court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Since the statute requires award of reasonable attorney's fees and costs "in addition" to the amount awarded Pettway, the Court must determine whether the attorney's fees were negotiated separately from the Settlement Agreement. If they are separately negotiated without regard for the amount awarded to Pettway, then there should be no conflict of interest or adverse effect upon the Settlement Agreement. See Silva v. Miller, 307 Fed. Appx. 349 (11th Cir. 2009) (the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement[]"). "[C]ourts consider whether the fees were negotiated separately and apart from a plaintiff's settlement of the FLSA claims." Pleasants v. Pilot Catastrophe Servs., Inc., 2024 WL 1892296, at *6 (S.D. Ala. Apr. 30, 2024) (citing Wing v. Plann B Corp., 2012 WL 4746258, at *4 (M.D. Fla. 2012)).

[1] For example, the sentence "The parties are not allocating any portion of the settlement payment with respect to the State Action" in Paragraph 4, should be removed.

In the Joint Motion, the parties state that the attorneys' fees were separately negotiated from Pettway's recovery, that they were negotiated after Pettway accepted the proposed settlement amount, and that the parties did not compromise Pettway's "claim in arriving at the attorneys' fees and costs amounts." (Doc. 16, p. 10). However, in the Settlement Agreement, the attorneys' fees and costs are identified as "Settlement Consideration" and to be paid "In *consideration* of Pettway's agreement to dismiss the Lawsuits with prejudice and agreement to the release stated herein." (Doc. 16-1 at ¶ 6) (emphasis added). In the next paragraph, captioned "Adequate Consideration", the parties again include the payment of attorney's fees and costs "as *consideration* for this Agreement." (Doc. 16-1 at ¶ 7) (emphasis added). Importantly, the parties assert that the attorney's fees and costs were incurred in obtaining the dismissal and release of the "Lawsuits" which indicates that part of the attorney fees and costs are "in consideration" of dismissal and release of the State Action. Overall, these paragraphs improperly link the payment of attorney fees and costs as "consideration" for the dismissal and release of Mount Vernon in this action and the State Action.

3. "Release"

The proposed Release and Settlement Agreement is intended to "resolve all disputes between the Parties" (Doc. 16-1, p. 1). However, for purposes of settling claims under the FLSA, the "Release" in Paragraph 10 is a disfavored pervasive release. Lima v. Ranger Env't Servs., LLC, 2023 WL 7249641, at *2 (S.D. Ala. Nov. 2, 2023) ("Specifically, 'the proposed release is pervasive (not limited to FLSA claims) and unbounded, covering a dizzying array of claims, known and unknown which courts have found to be an anathema to the FLSA.'") (quoting Laird v. Jiya Jeel, LLC, 2022 WL 17650573 (S.D. Ala. Dec. 13, 2022)); Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("The employer who obtains a pervasive release receives either nothing (if no claim accrues) or a windfall at the expense of the unlucky employee. In either

instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the circumstance.").

The Court is required to consider and approve only the settlement of Pettway's FLSA claims. The Court will not approve the "Release" provision so long as it contains:

a) Release and settlement of the State Action.[2]

b) Release of non-parties such as the Town of Mt. Vernon's "elected official, employees, agents, officers, … (collectively "Released Parties") from every Claim that he has …" (Id.).[3]

c) Any waiver of the right to file or join a lawsuit but for a lawsuit regarding the FLSA claims in this action. (Id.).[4]

e) Any waiver of right to monetary relief, reinstatement, or any other legal or equitable relief, but for relief regarding the FLSA claims in this action. (Id.).[5]

---

[2] "Release. The parties agree that the settlement is intended to be a total resolution and complete satisfaction of any and all claim, cause of action, liability, obligation, duty, damage, attorneys' fees, or expense of any kind whatsoever (collectively called "a Claim" or "Claims") that were or could have been asserted in the State Action …"

[3] "Accordingly, in consideration of the foregoing, on his own behalf, and on behalf of his heirs, family members, executors, administrators, attorneys, representatives, and assigns, Pettway forever releases, discharges and agrees to hold harmless Mt. Vernon, and all of its elected officials, employees, agents, officers, representatives, attorneys, departments, subsidiary or affiliated entities or divisions, insurance carriers, reinsurers, underwriters, successors, or assigns (collectively "Released Parties") from every Claim that he has or may have against Released Parties that were pleaded in or could have been pleaded in the Lawsuits concerning how he was compensated during his employment, the termination of his employment by Mt. Vernon, or how Mt. Vernon complied or did not comply with his employment agreement at termination."

[4] "Pettway agrees never to file a lawsuit or join in a lawsuit against Mt. Vernon or the Released Parties that asserts or alleges any Claim released by this Agreement."

[5] "Pettway expressly waives any right to monetary relief, reinstatement, or any other legal or equitable relief from Mt. Vernon or the Released Parties awarded by any governmental agency or court relating to any lawsuit, complaint, charge, or other proceeding (regardless of by whom filed or when filed) that asserts or alleges any Claim released by this Agreement."

f) Any agreement that Pettway will breach this Settlement Agreement if he brings or joins a lawsuit, etc., against Mount Vernon or the Released Parties (which includes non-parties) regarding any claim released by this Settlement Agreement which would include the State Action.[6]

4. "Waiver of Employment Rights"

In Paragraph 11, Pettway agrees that he is not entitled to, waives and will not seek employment, reinstatement or reemployment with Mount Vernon in the future (Doc. 16-1 at p. 3). The parties do not explain why Pettway is "not entitled" to reinstatement or reemployment with Mount Vernon. Further, Mount Vernon did not offer any separate consideration for waiving this right. This provision appears to punish Pettway for exercising his FLSA rights. The exercise of rights under the law should not make a person "unentitled" to employment. "[I]f an agreement to settle a FLSA overtime claim includes a no-reemployment provision, many judges will strike the provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights." Jun Soo Lee v. Guyoungtech USA, Inc., 247 F. Supp. 3d 1257, 1266 (S.D. Ala. 2017) (citation omitted).

> No matter how "voluntary" Plaintiff's submission to this provision may be, the Court believes that the inclusion of overly broad provisions like this in FLSA settlement agreements have implications that reach far beyond the parties involved. Because this agreement will become part of the public record, other employees seeking to vindicate rights under FLSA may feel deterred from doing so for fear that employers might seek to exact from them a promise to never again apply for future employment[.]

Id. (quoting Nichols v. Dollar Tree Stores, Inc., 2013 WL 5933991, at *5-6 (M.D. Ga. Nov. 1, 2013).

[6] "Pettway further acknowledges and agrees that if he brings or joins any lawsuit, complaint, lawsuit, or other proceeding against Mt. Vernon or the Released Parties that asserts or alleges any Claim released by this Agreement, he will materially breach this Agreement, and Mt. Vernon or the Released Parties will be entitled to recover as damages all their attorneys' fees, costs and expenses incurred to defend such lawsuit, complaint, charge or other proceeding."

For consideration of the proposed Settlement Agreement, this paragraph should be removed, or in the alternative, the parties may negotiate separate consideration for the waiver. See Kidd v. Wawa, Inc., 2024 WL 3342108 at *3, (M.D. Fla. May 28, 2024) (courts may approve waiver of future employment where plaintiffs receive "separate consideration from that under the FLSA" and the district court finds that the FLSA settlement is otherwise fair and reasonable).

5. "Non-Disparagement"

In Paragraph 12, the non-disparagement provision provides that once the proposed Settlement Agreement becomes effective, neither party may disparage the other. (Doc. 16-1 at p. 3). Generally, "[p]rovisions in a FLSA settlement agreement that…prohibit [] disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." Laird v. Jiya Jeel, LLC, 2022 WL 17650573, at *5 (S.D. Ala. Dec. 13, 2022) (citation omitted). Also, "while some courts have approved settlements containing non-disparagement terms, such terms were supported only after the Court found there had been independent consideration in addition to the amount a plaintiff received from the FLSA settlement." Id. (citations omitted). Here, no such separate consideration was given, so the proposed Settlement Agreement cannot be approved with this provision.

6. "Merger/Amendments"

Paragraph 17 states that the proposed Settlement Agreement "cannot be changed … except by written agreement signed by Pettway and Mt. Vernon's Mayor or Chair of the Town Council." (Doc. 16-1 at p. 4). This paragraph should be amended. Written modification by the parties without Court approval is not consistent with the requirement that the Court must determine whether settlement agreements are fair and reasonable resolutions of bona fide claims under the FLSA. See Rismay v. Ajanta, LLC, 2019 WL 2527306, at *2 (M.D. Fla. Feb. 25, 2019) ("… the Court cannot find an agreement to be fair and reasonable unless it is in final form, with no

opportunity for amendment. To hold otherwise would leave the parties free to circumvent Lynn's Food review through *post hoc* modifications of an already-approved agreement."); Clifton v. Heritage Constr. Savannah, Inc., No. CV422-099, 2022 WL 17961466, at *3 (S.D. Ga. Dec. 27, 2022) ("These provisions are unenforceable attempts to negate the necessity of Court approval of an FLSA settlement agreement or modification thereof.") (citation omitted).

7. "Applicable Law"

Paragraph 18 states that the proposed Settlement Agreement "is made in Alabama and must be governed by Alabama law, without reference to principles of conflicts of law." (Doc. 16-1 at p. 4). To be sure, because the FLSA is a federal statute, a substantial body of federal law applies to FLSA actions. However, in Deakle v. Grayson Air Conditioning, Inc., No. CV 22-00476-KD-N, 2023 WL 7360974, at *3 (S.D. Ala. Nov. 7, 2023), this Court addressed a similar choice of law provision wherein the parties agreed to Florida law. The Court explained that:

> The Settlement Agreements and Releases also contains a choice of law provision. Specifically, "This FLSA Agreement shall be governed by the statutes and common law of the state of Florida, without regard to conflict of law principles." (Id., p. 5, Section 5(c)). The Court has found decisions wherein the district court refused to approve a similar choice of law provision on grounds that federal law applies to FLSA settlements. See Hathaway v. Hemp Hop, LLC, 2022 WL 2305989, at *4 (M.D. Fla. Mar. 7, 2022), report and recommendation adopted, 2022 WL 2305981 (M.D. Fla. Apr. 11, 2022) ("The Agreement contains a choice of law clause agreeing that 'the law governing the creation, interpretation, and enforcement of this Agreement is the law of the State of Florida.' ... The FLSA is a federal provision and settlement agreements made under the FLSA provision are governed by federal law."). However, in Atkinson v. Gen. Elec. Credit Corp., 866 F.2d 396, 398–99 (11th Cir. 1989), the Eleventh Circuit explained that "[a]s the Supreme Court has observed, providing that a contract is to be governed by state law does not signify the inapplicability of federal law, for 'a fundamental principle in our system of complex national polity' mandates that 'the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.' " (quoting Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 157, 102 S.Ct. 3014, 3024, 73 L.Ed.2d 664 (1982)). Since the parties have negotiated and agreed that the laws of Florida will apply to their Settlement Agreements and Releases, and that agreement does not appear to infringe upon any

> rights that Deakle and Perry may have under federal law, the Court will allow the choice of law provision, should the parties choose to retain it in their revised Settlement Agreements and Releases.

Deakle v. Grayson Air Conditioning, Inc., No. CV 22-00476-KD-N, 2023 WL 7360974, at *3–4 (S.D. Ala. Nov. 7, 2023). With this caveat, should the parties decide to retain it, the Court will allow the choice of law provision.

III. Conclusion

For the reasons stated above, the parties are granted **leave to file** an amended proposed Release and Settlement Agreement and renewed Joint Motion to Approve Settlement which address the Court's concerns **on or before December 4, 2026.**

DONE and ORDERED this the 13th day of November 2026.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE